UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LARCENIA TAYLOR,**<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>**PENNY PRITZKER**, Secretary, United States Department of Commerce,<br><br>　　　　　　Defendant. | CASE NO. 1:12-CV-01931-AWI-JLT<br><br>**ORDER GRANTING SUMMARY JUDGMENT**<br><br>(Doc. 50) |

　　　Plaintiff Larcenia Taylor brought this action against Penny Pritzker, Secretary of the United States Department of Commerce, for alleged racial discrimination based upon disparate treatment in violation of Title VII of the Civil Rights Act of 1964 Taylor states she experienced while employed at the Bakersfield Local Census Office from July 27, 2009 to April 30, 2010.  Pritzker now seeks summary judgment on the merits of Taylor's Title VII discrimination claim as well as on Taylor's failure to exhaust administrative remedies.  For the reasons that follow, the Court grants summary judgment for a failure to exhaust administrative remedies.

I.　　　FACTUAL AND LEGAL BACKGROUND

　　　In July 2009, Plaintiff Larcenia Taylor started working for the Bakersfield office of the Census Bureau.  Taylor was a temporary Partnership Assistant whose job was to participate in community outreach to increase participation in the 2010 census.  Taylor Depo., 39:11-19.  On July 27, 2009, Taylor signed and understood her 2010 Employment Agreement Temporary Excepted Service stating that "[t]o preserve your rights under the law, you must contact the EEO Office within 45 CALENDAR DAYS of the alleged discrimination."  Id. at 46:22-47:10.  On the same day, Taylor

1  received and reviewed EEO training materials that provided "[i]f you believe discrimination has
2  occurred, you must contact an EEO counselor within 45 calendar days of the date of the matter
3  alleged to be discriminatory or, in the case of personnel action, within 45 calendar days of the first
4  effective date of the action, or when you first became aware of the alleged discrimination, a
5  counselor will try to resolve the complaint.  If the complaint is not resolved you will be provided a
6  Notice of Right to File a Complaint.  You must file within 15 calendar days from receipt of the
7  notice." Id. at 52:3-20.

8       Taylor worked with four other Partnership Assistants; all of them were supervised by Daniel
9  Romero, a Partnership Specialist.  Taylor is African American; Daniel Romero and the four other
10 Partnership Assistants are Hispanic Americans.  Taylor alleges that she was discriminated against on
11 the basis of race while supervised by Romero because Romero favored the Hispanic employees by
12 giving them leads, allowed the Hispanic employees to attend meetings that she was not allowed to
13 attend, ignored her requests to be transferred, did not allow her to present all the census programs in
14 the schools, failed to hire qualified African Americans, failed to establish a Quality Assurance
15 Center ("QAC") in the African-American community, and continuously informed her that she would
16 be fired for talking to her supervisor about discrimination and differential treatment.  Doc. 51,
17 2:6-18.

18      Taylor alleges she brought these issues up with Romero.  Taylor Depo., 49:3-9.  Taylor
19 testified she emailed Romero about her concerns on November 28, 2009, December 9, 2009, and
20 January 21, 2010.  Id. at 129:9-11, 133:18-21, 136:14-21.  Taylor also testified she called EEO
21 counselor Claudio Catota once per month from August 2009 until December 2009 about her
22 concerns.  Id. at 160:5-161:12.  Taylor testified that after each time she talked to Catota, Romero
23 would have something to say about it, such as "[y]ou keep talking to them or keep doing this and I'm
24 gonna fire you or you can resign or since you're an at-will employee, I can let you go."  Id. at
25 145:16-23.

26      There is no documentation of these phone calls to Catota, however, until December 14, 2009
27 when Taylor contacted Catota to open an informal claim of discrimination and Catota completed a
28 Decennial Informal Complaint Contact Sheet.  Id. at 82:24-83:5, 85:4-11, 158:7-10; Doc. 50, Exh. 1.

1  The same day the Agency sent Taylor the Decennial Census EEO Rights and Responsibilities (R&R)
2  packet.  Doc. 50, Exh. 2.  The R&R packet provided Taylor with notice of the statutory initial
3  contact and filing deadlines for EEO claims and gave a detailed summary of the various stages of the
4  administrative process.  One of the rights and responsibilities that was explained in the R&R packet
5  was the requirement that a "person who believes s/he has been discriminated against is required to
6  contact an EEO Specialist/Counselor within 45 calendar days of the alleged discriminatory event or
7  the effective date of the alleged discriminatory action."  Id.  Taylor's husband signed for the R&R
8  packet on December 21, 2009.  Id.; Taylor Depo., 91:10-16.  Taylor testified that her husband did
9  not give her this mail, but that he was authorized to receive mail for her.  Id. at 92:6-11, 101:17-19.
10         On December 31, 2009, the Census EEO office mailed Taylor a Notice of Right to File letter.
11 Doc. 50, Exh. 3.  This letter notified Taylor that she had the right to file a formal complaint within
12 fifteen days of receiving the letter as Taylor was unable to reach a resolution during the
13 pre-complaint counseling stage.  Id.  Taylor's husband signed for the Notice of Right to File letter on
14 January 6, 2010, at Taylor's home address.  Taylor Depo., 94:4-9.  Taylor testified that she did not
15 know if her husband gave this letter to her, that he "must have" given her the letter, and also that her
16 husband did not personally give her this letter.  Id. at 96:19-24, 99:19-21, 100:1-7.  Taylor checked
17 the locations where her husband put her mail, but it would not be "a priority."  Id. at 100:24-25.
18 Taylor's position is that the mail should have required her signature.  Id. at 101:11-16.  Taylor
19 acknowledged, however, that her husband was authorized to receive mail for her.  Id. at 101:17-19.
20 Taylor did not file a formal complaint within fifteen days of her husband signing for this Notice of
21 Right to File letter.  Doc. 50-8, p. 5.  Taylor alleges that she failed to exhaust administrative
22 remedies because Catota intentionally misled her.  Doc. 51, 2:18-27; Doc. 54, 9:2-11.
23         In March 2010, Taylor was transferred to the Fresno office to work under the supervision of
24 Johnson, an African American.  Taylor Depo., 40:1-10, 44:21-45:5.  Taylor testified that she did not
25 experience any more alleged discrimination under Johnson.  Id. at 109:18-20.  After the transfer
26 though, she still felt emotional and mental anguish from the prior discrimination.  Doc. 54, 13:1-13.
27 Taylor subsequently left her position at the Census Office in April 2010.  Taylor understood that her
28 position was scheduled to end May 1, 2010 for "lack of work" and that the job had always been

1  "strictly temporary." Taylor Depo., 46:1-8, 103:14-17, 106:10-12. Taylor's Notification of
2  Personnel Action document stated that the reason for termination was "[l]ack of work." Id. at
3  108:25-109:7. Taylor, however, alleges she resigned from her position. Id. at 108:2. Taylor never
4  applied for another position with the Census Bureau, in her words, "[b]ecause they're racist." Id. at
5  106:13-17.

6  On August 12, 2010, while no longer employed by the Census Bureau, Taylor attended a job
7  fair at Cal State Bakersfield. Id. at 105:10-12, 110:2-7. John Flores and Reyna Olaguez, both of
8  whom Taylor previously worked with, represented the Census Bureau at the job fair. Id. at 111:8-9.
9  Taylor's declaration states that only Hispanics were at the Census Bureau's tables at the job fair.
10 Doc. 54, 8:22-23. Taylor testified that there were no African Americans representing the Census
11 Bureau at the job fair. Taylor Depo., 148:16-17. Taylor did not fill out any applications at the job
12 fair because Flores and Olaguez allegedly "don't hire blacks." Id. at 111:10-12. After the job fair,
13 Taylor again called Catota at the EEO office and told her that she was not going to apply for a
14 position because Flores and Olaguez were at the job fair. Id. at 85:16-22, 86:1-87:4, 112:23-113-1.
15 This was Taylor's first call to Catota since December 2009. Id. at 161:14-22.

16 On September 10, 2010, Catota completed and signed a document labeled "Allegation of
17 Discrimination" in connection to this August 12 phone call. Id. at 86:23-87:3. On September 14,
18 2010, Taylor's husband signed for a Certification of Final Interview and Notice of Right to File a
19 Formal EEO Complaint letter dated the previous day. Id. at 116:4-117:2. Taylor's husband gave
20 this to Taylor. Id. at 117:3-4. In response to this letter, on September 15, 2010, Taylor filled out and
21 signed a Complaint of Employment Discrimination Against the U.S. Department of Commerce.
22 Doc. 57-2, p. 54-56; Taylor Depo., 117:18-25, 118:15-16, 118:20-119:1. The EEO received this on
23 September 22, 2010. Id. at 118:17-19. The first four allegations raised in Taylor's complaint related
24 to experiences from when Romero was her supervisor. Doc. 57-2, p. 54-56; Taylor Depo.,
25 119:21-24. These alleged discriminatory acts ended once Taylor was transferred to Johnson. Id. at
26 119:25-120:2. The fifth and final allegation in the complaint related to the August 12, 2010 job fair.
27 Doc. 57-2, p. 54-56; Taylor Depo., 118:21-24.

28 The administrative complaint was denied in December 2010 on the basis that Taylor was

untimely in contacting the EEO with her complaints. Taylor then sought review by the EEOC. On October 11, 2012 the EEOC issued a final decision affirming the earlier decision. Taylor filed suit against Defendant in federal district court on November 28, 2012. Doc. 1. Taylor is pro se, proceeding in forma pauperis. Her complaint was screened and dismissed with leave to amend. Doc. 3. The operative complaint is now the first amended complaint ("FAC"). Doc. 4.

The FAC explicitly lists two "CAUSES OF ACTION." Doc. 4, 10:17-12:28. The first is an alleged violation of 42 U.S.C. § 1981 and Title VII for employment discrimination based upon the employee's race. Id. at 10:17-12:9. The FAC supports this cause of action with allegations related to Taylor's employment with the Census Bureau, but does not mention the August 12, 2010 job fair here. Id. The August 12, 2010 job fair allegations are discussed in a comprehensive "STATEMENT OF CLAIM" at the beginning of the FAC. Id. at 6:6-20. The "SECOND CAUSE OF ACTION" is an alleged violation of the First Amendment for Romero alleging telling Taylor that she as a census worker "has no voice or opinion." Id. at 12:9-28. The FAC was screened. Taylor's claims for violation of the First Amendment and 42 U.S.C. § 1981 were dismissed, but Taylor was permitted to proceed on her Title VII disparate treatment employment discrimination claim. Docs. 7, 11.

On July 23, 2015, the Court issued an Order for Additional Briefing from Taylor. Doc. 67. The Court sought clarification on what precisely Taylor pled in the FAC, specifically, "whether (a) the August 12, 2010 job fair allegations are evidence to support her claim of disparate treatment for when she was employed by the Census Bureau or (b) the August 12, 2010 job fair allegations are a separate and distinct theory of liability under Title VII." Id. at 1:20-25. Taylor responded that "the August 12, 2010 job fair allegations are evidence to support her claim of 'Disparate Treatment' for when she was employed by the Census Bureau." Doc. 68, 1:18-20.

On September 6, 2013, Defendant had previously filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Taylor's untimely contact with the EEO means her claim has not been administratively exhausted. Doc. 17. The Court found that "[a]t this point, Plaintiff has alleged contact in 2009 (which may be fairly read at this stage to cover the events of July to December 2009) and contact in April and May 2010 (which covers her resignation in April 2010). Plaintiff has sufficiently pled facts to satisfy this step of administrative exhaustion at this early stage

of the litigation. Insofar as Defendant wishes to raise a different administrative exhaustion requirement (e.g. Plaintiff did not file a formal EEO complaint within 15 days of notice of right to file letter), the issue is not fully argued in this motion. Further, these matters might be better resolved through an early motion for summary judgment rather than a motion to dismiss." Doc. 24, 8:3-11.

Discovery has since been conducted. On May 5, 2014 Defendant filed the present motion for summary judgment against Taylor's "single cause of action for disparate treatment alleging racial discrimination against the Defendant Secretary of the Department of Commerce regarding [Taylor's] temporary employment with the Census Bureau." Doc. 50-1, 2:2-4. Defendant argues that Taylor's claim fails on the merits because Taylor did not meet her prima facie and also has not provided any evidence that the Census Bureau's legitimate non-discriminatory reasons were pretext. Id. at 2:4-9. In the alternative, Defendant argues that Taylor's claim fails because she did not exhaust her administrative remedies. Id. at 2:11-15.

## II.     LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 950 (9th Cir. 2009). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party "must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). In resolving the summary judgment motion, the evidence of the opposing party is to be believed (Anderson, 477 U.S. at 255), and all reasonable inferences that may be drawn from the facts placed

before the court must be drawn in favor of the opposing party (Matsushita, 475 U.S. at 587).

Title VII is a limited waiver of the United States' sovereign immunity for claims of federal employment discrimination. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 92–94 (1990). Section 717 of the Civil Rights Act, codified at 42 U.S.C. § 2000e–16, "provides that all personnel actions affecting federal employees and applicants for federal employment shall be made free from any discrimination based on race, color, religion, sex, or national origin," and "establishes an administrative and judicial enforcement system." Brown v. Gen. Servs. Admin., 425 U.S. 820, 829-30 (1976) (internal quotation marks omitted). Pursuant to Title VII, federal employees and applicants for federal employment who pursue judicial claims of employment discrimination must first exhaust their administrative remedies in accordance with applicable statutory provisions. See 42 U.S.C. § 2000e; see also B.K.B. v. Maui Police Department, 276 F.3d 1091, 1099 (9th Cir. 2002); Leorna v. United States Department of State, 105 F.3d 548, 550 (9th Cir. 1997); Payne v. Locke, 766 F.Supp.2d 245, 249 (D.C.C. 2011). As Brown explained, Title VII "permits an aggrieved [federal] employee to file a civil action in a federal district court," but first, as a precondition to filing, "the complainant must seek relief in the agency that has allegedly discriminated against him." Id. at 832; see also 42 U.S.C. § 2000e–16(c).

The purpose of the exhaustion requirement is twofold: (1) to give notice of the alleged violation so as to allow the agency to fix the problem if applicable and (2) to give the EEOC and/or agency a chance to investigate and possibly informally resolve the claim. See Pacheco v. Mineta, 448 F.3d 783, 788–89 (5th Cir. 2006); Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994); see also Ong v. Cleland, 642 F.2d 316, 318–20 (9th Cir. 1981). Therefore, a complaint "must be sufficiently precise to identify the aggrieved individual and the agency and to describe generally the action(s) or practice(s) that form the basis of the complaint." 29 C.F.R. § 1614.106(c).

The EEOC has promulgated regulations governing the acceptance and processing of discrimination complaints in federal employment cases. See id. at §§ 1614.104–1614.110 (detailing the administrative processing of federal Title VII complaints). These regulations provide time limits for the initiation of informal pre-complaint contact with an EEO counselor, and the filing of a formal EEO complaint. To initiate informal pre-complaint processing, an aggrieved federal employee must

consult with an EEO counselor within forty-five days of the alleged discriminatory event. Id. at § 1614.105(a)(1). If the matter is not resolved by informal pre-complaint counseling, the agency must provide the employee with notice of the right to file a formal complaint of discrimination. Id. at § 1614.105(d). After receipt of notice, the employee has fifteen days to file the formal complaint. Id. at § 1614.106(b). The employee may file a civil action in federal district court within ninety days of receiving notice of final agency action on the employee's formal complaint by the ALJ, or after 180 days from the filing of the complaint if no final action has been taken by that time. Id. at § 1614.407(a)-(b); 42 U.S.C. § 2000e–16(c).

Time limitations such as those found in Title VII "are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 452–53 (7th Cir. 1990). These rules are not mere technicalities, but integral parts of Congress' statutory scheme of achieving a "careful blend of administrative and judicial enforcement powers." Brown, 425 U.S. at 833; see also McKart v. United States, 395 U.S. 185, 195 (1969). Accordingly, failure to timely file an EEO complaint, absent any lawful justification for such a failure, should normally result in dismissal of the complaint with prejudice. 29 C.F.R. § 1614.107(a)(1)-(2); Leorna, 105 F.3d at 550–51 ("Pursuant to these procedures, a claimant must consult the allegedly discriminating agency's EEO counselor prior to filing a complaint in order to try to informally resolve the matter. . . . [I]f the matter cannot be resolved informally, a complaint must be filed with the agency within fifteen days of the conclusion of the pre-complaint processing. The agency will dismiss a complaint that fails to comply with the applicable time limits or that raises a matter that has not been brought to the attention of a counselor.")

Thus, the regulations provide that an employee's failure to comply with applicable time limits is grounds for the dismissal of her EEO complaint, although "[t]he time limits in this part are subject to waiver, estoppel and equitable tolling." 29 C.F.R. §§ 1614.107(a)(2), 1614.604(c). Similarly, "although the regulatory pre-filing exhaustion requirement at §1614.105 'does not carry the full weight of statutory authority' and is not a jurisdictional prerequisite for suit in federal court, [the Ninth Circuit has] consistently held that, absent waiver, estoppel, or equitable tolling, 'failure to

comply with this regulation [is] . . . fatal to a federal employee's discrimination claim' in federal court." Kraus v. Presidio Trust Facilities Division/Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009), quoting Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002); see also Johnson v. U.S. Treasury Dep't, 27 F.3d 415, 416 (9th Cir. 1994) (per curiam); Boyd v. U.S. Postal Serv., 752 F.2d 410, 414 (9th Cir. 1985).

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

##### December 14, 2009 Informal Complaint

Taylor initiated an informal complaint of employment discrimination on December 14, 2009 with a phone call to Catota. It is unreasonable to conclude that Taylor was not subsequently sent the Notice of Right to File a Formal Complaint. See Doc. 50, Exh. 3. It is further unreasonable to conclude that the Notice was not received at Taylor's household on January 6, 2010, as Taylor testified to her husband's signature on the document's certified mail return receipt. See Taylor Depo., 94:4-24. It is undisputed that Taylor did not file a formal complaint within fifteen days of January 6, 2010. See Doc. 50-8, p. 5; Doc. 51, 14:1-12. Accordingly, Taylor's failure to timely file a formal complaint, absent any lawful justification, should result in dismissal of her December 14, 2009 informal complaint with prejudice. See 29 C.F.R. §§ 1614.106(b), 1614.107(a)(1)-(2). Taylor argues that equitable tolling provides such a justification because allegedly she was intentionally misled by Catota.

The doctrine of equitable tolling focuses on whether, despite all due diligence, there was excusable delay by plaintiff. See Leorna, 105 F.3d at 551. Such tolling has been applied to excuse a claimant's failure to comply with relevant time limitations when he had neither actual nor constructive notice of the filing period. Id. Taylor, however, does not dispute that she read and understood the applicable EEO filing deadlines as detailed in her employment agreement and EEO training materials when she began work at the Census Bureau. See Taylor Depo., 46:22-47:10, 52:3-20. Taylor, accordingly, received actual notice of the fifteen-day deadline for filing a formal EEO complaint when she began work the Census Bureau. She further received, at the least, constructive notice of the Notice of Right to File a Formal Complaint when her husband received

9

and signed for the letter at her home address. Taylor contends that the notice should have required her signature for receipt. This, however, is not material considering that the letter was mailed to her home address and her husband was authorized to receive mail for her.

Other courts have found equitable tolling was not warranted after the plaintiff received at the least constructive notice of right-to-sue letters. In Irwin v. Veterans Administration, where a complaint alleging discrimination was filed with the district court fourteen days beyond the limitations period, the Supreme Court found dismissal was proper even though the plaintiff's attorney had been out of the country for approximately two weeks after the right-to-sue notice was received and the plaintiff did not personally receive notice until after counsel's return. 498 U.S. 89, 92, 96 (1990). In that case, the Supreme Court specifically rejected Irwin's argument which "urge[d] that his failure to file in a timely manner should be excused because his lawyer was absent from his office at the time that the EEOC notice was received, and that he thereafter filed within 30 days of the day on which he personally received notice." Id. at 96. The Supreme Court held that "the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect." Id. "A contrary rule would . . . encourage factual disputes about when actual notice was received, and thereby create uncertainty in an area of the law where certainty is much to be desired." Id. at 93; see also Carter v. Department of Veterans Affairs, 228 Fed.Appx. 399, 401 (5th Cir. 2007); Williams v. Mabus, 2014 WL 5305819, *5-6 (N.D. Cal. Oct. 16, 2014) (equitable tolling was not applicable after plaintiff received constructive notice of fifteen-day deadline for filing a formal EEO complaint when plaintiff presented no evidence other than his own speculation to support theory that notice of his right to file a formal EEO complaint was not sent while defendant presented evidence of postal records and certified mail receipts to support the contrary). Having concluded that plaintiff received at least constructive notice of the Notice of Right to File a Formal Complaint, and finding no basis to conclude that Taylor exercised due diligence, the Court finds that equitable tolling does not apply.

Equitable estoppel, on the other hand, focuses on the actions taken by a defendant in preventing the plaintiff from complying with the statutory deadlines. Taylor never specifically raises equitable estoppel, but she argues that Catota misled her through the EEO complaint

processing procedure. Doc. 51, 17:2-20:2. In Johnson v. Henderson, the Ninth Circuit stated that:

> "A finding of equitable estoppel rests on the consideration of a nonexhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.... Equitable estoppel, then, may come into play if the defendant takes active steps to prevent the plaintiff from suing in time—a situation that the Seventh Circuit terms fraudulent concealment. Fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time."

314 F.3d 409, 414 (9th Cir. 2002) (internal citations and quotations omitted).

Here, Taylor does not argue with any specificity for any deceptive practice on the part of Catota, much less submits evidence that Catota's conduct caused her to miss the deadline for filing her formal complaint late in January 2010. Taylor further does not allege that Catota took any active steps to prevent her from filing her formal complaint. Rather, Taylor makes conclusory statements about Catota misleading her and alleges that "I was not aware that these particular paper work [the January 6, 2010 Notice of Right to File a Formal Complaint] was time sensitive because Ms. Catota had not gave me a message that I would be receiving time sensitive paper work." Doc. 51, 13:18-20. Regardless, there was nothing deceptive about this as the EEO training, Taylor's employment agreement, and the Notice of Right to File a Formal Complaint itself put Taylor on notice of the time sensitive nature of the paperwork and the EEO process.

Taylor also alleges that "Ms. Catota gave me an extended counseling when I worked for the U.S. Department of Commerce, (United States Census) rather than have me initiate and move forward with my claim." Doc. 54, 11:28-12:2. While Taylor testified she called Catota once per month between August 2009 and December 2009, there is no documentation of any phone calls to Catota until December 14, 2009. Taylor alleged in testimony that this is "[b]ecause [Catota] chose to destroy it." Taylor Depo., 157:6-7. However, there is no evidence that this documentation ever existed other than Taylor's speculation. See id. at 156:13-157:5. Likewise, there is no evidence that Taylor expressed an interest to Catota in pursuing her claims before December 14, 2009. More importantly, Taylor's claims from when she was employed by the Census Bureau are clearly time barred by her own failure to respond to the January 6, 2010 Notice of Right to File a Formal

11

Complaint.

Taylor further argues that "[i]f the EEO Counselor Catota wanted to help me as she was supposed to do[, s]he would have informed [me] about ADR and the Hearing process" and "I believe the EEO Counselor knew what she was doing, since I didn't it was up to her to initiate and direct me the right way. . . . On August 12, 2010, Ms. Catota should have directed me to the correct forum." Doc. 51, 17:22-24, 18:4-13. However, this ignores that by August 12, 2010, Taylor had already missed the deadline for filing a formal complaint pursuant to the January 6, 2010 notice. Accordingly, there was no "correct forum" for those prior claims that Catota could have directed Taylor. Moreover, during the informal counseling period, agency regulations strictly prohibit counselors from restraining a claimant in any way from filing a complaint. See 29 C.F.R. § 1614.105(g) ("The Counselor shall not attempt in any way to restrain the aggrieved person from filing a complaint."). Likewise, "[t]he mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when," as here, "the later investigation does not result in an administrative finding of discrimination." Boyd, 752 F.2d at 414. Therefore, the Court finds the neither equitable estoppel nor equitable tolling applies and that Taylor failed to exhaust administrative remedies on her December 14, 2009 informal complaint.

*August 12, 2010 Informal Complaint*

On August 12, 2010 Taylor initiated a second informal complaint of discrimination when she called Catota after attending the job fair on the same day. In connection to this August 12, 2010 phone call, Catota completed and signed a document labeled "Allegation of Discrimination" on September 10, 2010. Taylor Depo., 86:23-87:3. On September 14, 2010, Taylor received a Certification of Final Interview and Notice of Right to File a Formal EEO Complaint letter dated the previous day. Id. at 116:4-117:2, 117:3-4. In response, on September 15, 2010, Taylor filled out and signed a Complaint of Employment Discrimination Against the U.S. Department of Commerce. Doc. 57-2, p. 54-56; Taylor Depo., 117:18-25, 118:15-16, 118:20-119:1. The EEO received this on September 22, 2010. Id. at 118:17-19.

The first four allegations raised in Taylor's formal EEO complaint related to experiences from when Romero was her supervisor. Doc. 57-2, p. 54-56; Taylor Depo., 119:21-24. However, it

is undisputed that Taylor had been transferred away from Romero to work under the supervision of Johnson in March 2010. Id. at 40:1-10, 44:21-45:5. It is also undisputed that Taylor's position at the Census Office had ended by May 1, 2010. Id. at 103:14-17. But to initiate informal pre-complaint processing, an aggrieved federal employee must consult with an EEO counselor within forty-five days of the alleged discriminatory event. See 29 C.F.R. § 1614.105(a)(1). Accordingly, by August 12, 2010, any alleged discriminatory events from Taylor's time while employed at the Census Office or while under the supervision of Romero were untimely. The fifth and final allegation in Taylor's formal EEO complaint relates to the August 12, 2010 job fair. See Doc. 57-2, p. 54-56; Taylor Depo., 119:21-24. However, this is not an independent cause of action in the FAC, but rather "evidence to support [Taylor's] claim of 'Disparate Treatment' for when she was employed by the Census Bureau." Doc. 68, 1:18-20.

Consequently, Taylor has failed to state a claim on which relief can be granted in her FAC, unless there is a basis for equitable tolling or estoppel of the running of the statute of limitations. However, for the reasons discussed in the preceding section, equitable tolling and estoppel are not applicable here. Accordingly, Defendant's motion for summary judgment is granted on the grounds that Taylor failed to exhaust her administrative remedies.

IV.   ORDER

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's motion for summary judgment is **GRANTED**;
2. All future dates in the matter are hereby **VACATED**;
3. The Clerk shall **ENTER** judgment for Defendant; and
4. The Clerk shall **CLOSE** the case.

IT IS SO ORDERED.

Dated:   August 4, 2015                              _____
                                                         SENIOR DISTRICT JUDGE